DAVID C. SHONKA
Acting General Counsel
MEGAN COX
ALLISON M. LEFRAK
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue NW
Mailstop CC-8256
Washington, DC 20580
Telephone: (202) 326-2282 (Cox)
Telephone: (202) 326-2804 (Lefrak)
Facsimile: (202) 326-3392
Email: mcox1@ftc.gov, alefrak@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

ADAM PAUL LAXALT
Attorney General
JOHN R. MCGLAMERY
LAURA TUCKER
Deputy Attorneys General, Bureau of Consumer Protection
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
Phone (775) 684-1169
Facsimile: (775) 684-1170
Email: JmcGlamery@ag.nv.gov, LMTucker@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>and<br><br>STATE OF NEVADA,<br><br>Plaintiffs,<br><br>v.<br><br>EMP MEDIA, INC., et al.,<br><br>Defendants. | Case No: 2:18-cv-00035<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO AUTHORIZE ALTERNATIVE SERVICE OF PROCESS ON DEFENDANT COTTELLI** |

Plaintiffs, the Federal Trade Commission (FTC) and the State of Nevada, respectfully move this Court for an order pursuant to FED. R. CIV. P. 4(f)(3) to

1

serve the defendant, Shad Cottelli,[1] with the complaint and summons via electronic mail ("email"). Based on the FTC's pre-Complaint investigation, Plaintiffs believe that Cottelli, the leader behind the unlawful revenge porn website, MyEx.com, resides outside of the United States. Plaintiffs, however, do not know where Cottelli currently resides despite undertaking extensive efforts to locate him in the U.S. and in foreign jurisdictions, including South Africa and the United Kingdom. Indeed, it appears that Cottelli has purposefully evaded Plaintiffs to thwart the FTC's pre-complaint investigation and to avoid service of process in this case. As described in detail below, alternative service on Cottelli via email is appropriate in these circumstances, as it is reasonably calculated to provide the defendant with notice of this action, and is the service mechanism most likely to actually reach him.

## I. BACKGROUND

On January 9, 2018, Plaintiffs filed their complaint (the "Complaint") for permanent and equitable relief to halt Defendants' practice of posting sexually explicit images and personal information on a publicly available website, MyEx.com, without the consent of the victims depicted in the images. The Complaint alleges that the Defendants' practices violated Section 5 of the FTC Act and the Deceptive Trade provisions of Chapter 598 of the Nevada Revised Statutes. Contemporaneously with filing the Complaint, Plaintiffs filed a Stipulated Final Order ("Order") with Defendant Aniello Infante, resolving all of Plaintiffs' allegations against him and imposing injunctive relief and an order for equitable monetary relief. This Order was entered by the Court on January 10, 2018. The website MyEx.com appeared to be offline on January 10, 2018, and the site appears to still be offline as of January 24, 2018.

---

[1] Cottelli also goes by the name Shad "John" Applegate. Public records show that Cottelli's original legal surname was Applegate and that he legally changed it in 2015. We refer to him as "Cottelli" throughout this motion, but the attached evidence interchangeably refers to him as "Shad Cottelli" and "Shad Applegate."

Before filing the Complaint, Plaintiffs investigated Defendants' unlawful operations. During its investigation, the FTC sought information and records from third parties, including domain name registrars associated with the website MyEx.com, and documents, information, and testimony from Defendant Infante. The FTC also sought documents, records, and information from Cottelli, serving him with a civil investigative demand ("CID") at his last known address in the United States. That address, however, turned out to be a commercial mail receiving agency that Cottelli used for his e-commerce businesses, including Defendant EMP Media, Inc., through which he operates MyEx.com. Cottelli never responded to the CID, nor did he respond to any other attempts to contact him.[2]

As set forth below, the record clearly establishes that Cottelli: (1) operates his business online and routinely uses four email addresses; (2) currently resides in an unknown foreign location; and (3) is likely aware of this action and using his foreign location to evade service of process. All of these facts support an order for alternative service by email pursuant to Rule 4(f)(3).

### A. Cottelli operates his business online and routinely uses four email addresses to conduct business, communicate with business associates and partners, and communicate with his co-defendant and related legal counsel

Since at least 2011, Cottelli has directed and managed MyEx.com, a publicly available website that expressly solicits and posts sexually explicit images and

---

[2] During the pre-Complaint investigation, the FTC presumed that Cottelli, an American citizen, was located in the U.S., based on the contact information he provided to a domain name registrar in January 2016 and FTC staff's research. The FTC served the CID via FedEx on the only known U.S. address for him:  6130 W. Flamingo Road #732, Las Vegas, Nevada 89103. That address, which he also listed when registering South African companies, is a mailbox rental facility owed by PostalAnnex. Although a PostalAnnex receptionist signed for the CID, Cottelli never responded. Exh. 1 at 3-4 (Thomas Decl. at ¶¶ 12-13). The FTC then hired an investigator, who identified the address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Las Vegas, NV 89103 as Cottelli's likely domicile. When attempting to serve the CID at this address in October 2016, the investigator was informed that Applegate did not live there. In November 2016, the investigator identified ▮▮▮▮▮▮▮▮▮▮, Henderson, NV 89014-2117 as an address for Applegate. When attempting service at this address, a guard to the building refused to allow the investigator on the property and stated that he did not have a "Shad Applegate" listed as a resident. Exh. 2 at 1-2 (Hicks Decl. at ¶¶ 5-10).  The FTC does not know if Cottelli received the CID.

3

videos of individuals without their consent. Ensuring the victims' humiliation, Cottelli's website also solicits their personal identifying information, such as names, ages, employers, phone numbers, email addresses, and social media accounts. MyEx.com makes the personal information publicly available, posting it alongside the intimate images of the victims, resulting in the explicit images showing up in search engine results associated with the victims and in other forms of harassment. Cottelli manages this web-based operation virtually and communicates with his business partner through at least four email addresses.

Cottelli acquired the domain name MyEx.com in November 2011, at which time he provided the domain name registrar with the email address "shadapplegate@gmail.com." Exh. 1 at 4 (Thomas Decl. at ¶ 16; Attach. H at 20). From 2011 to 2013, Cottelli received and responded to email communications regarding the website at this email address. *Id*. (Thomas Decl. at ¶ 17; Attach. H at 11-14, 20). These communications included email communications in May 2013 from law enforcement relating to inquiries about illegal content posted on MyEx.com, such as child exploitation and underage content materials. *Id*. at 7-8 (Thomas Decl. at ¶¶ 28, 33; Attach. H at 15-16). Cottelli has also run other websites with the email address shadapplegate@gmail.com as his contact, such as bottleservice.net and hotsearchit.net. *Id*. at 9-10 (Thomas Dec. at ¶¶ 41-42; Attachs. K-L). In 2016, Cottelli informed his co-defendant, Infante, likely via email, that Cottelli dissolved EMP,[3] the corporate entity that managed the merchant accounts for MyEx.com, apparently by forging Infante's name to the

---

[3] While a certificate of dissolution for EMP was filed with the Nevada Secretary of State on July 18, 2016, federal courts have held that the capacity of a dissolved corporation to be sued is determined by the law of the state in which it was organized. Per Nevada state law NEV. REV. STAT. § 78.585, a corporation may be sued for two years following dissolution ("the dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or stockholders commenced within 2 years after the date of the dissolution with respect to any remedy or cause of action in which the plaintiff learns, or in the exercise of reasonable diligence should have learned of, the underlying facts on or before the date of dissolution, or within 3 years after the date of dissolution with respect to any other remedy or cause of action.").

documents. Exh. 3 at 6, 12 (Infante Investigational Hearing Transcript "IH Transcript") at 24, 45).  Also in 2016, Cottelli changed his contact email for his GoDaddy account to shadcottelli@gmail.com. Exh. 1 at 8-9 (Thomas Decl. at ¶ 38; Attach. H at 22).

Furthermore, MyEx.com also communicates with victims by email. For instance, when victims contact MyEx.com via email to request the takedown of the images posted without their consent, the Defendants' email responses often seek to extort the victims. Exh. 1 at 12 (Thomas Decl. at ¶ 50). Defendants' emails generally instruct the victims to pay hundreds or thousands of dollars via wire transfer to the Philippines, a country Cottelli is known to frequent in his travels. *See id.;* Exh. 4 at 1 (Infante Decl. at ¶ 7).

In addition, his business partner, Infante, testified that Cottelli communicated with him as recently as November 2017 from three different email addresses: shadapplegate@gmail.com, eroticmp@gmail.com, and enzovalentino@protonmail.com. Exh. 4 at 1 (Infante Decl. at ¶ 9). Notably, Infante and Cottelli had numerous electronic communications through the shadapplegate@gmail.com, eroticmp@gmail.com, and enzovalentino@protonmail.com email address(es) while the FTC's pre-Complaint investigation was pending, such as:

- emails sent and received in August and September 2016 and in January and February 2017 between Cottelli, Infante, and Defendant EMP Media's former corporate counsel (*Id.* at 2-3 (Infante Decl. at ¶¶ 10, 18-19; Attachs. A, I-J);

- emails in February, June, and August 2017 between Cottelli and Infante, which included communications forwarded to and/or from Infante's initial legal counsel for the FTC investigation (*Id.* at 2 (Infante Decl. at ¶¶ 14-16; Attachs. E-G);

5

- emails between Cottelli and Infante in October 2017, in which Cottelli lists what appear to be defenses to the FTC's investigation, and which Infante forwarded to his legal counsel in this matter (*Id.* at 3 (Infante Decl. at ¶ 17; Attach. H).

### B. Cottelli resides in an unknown foreign country and the FTC exhausted all reasonable efforts to locate him

Throughout its investigation, and after filing the complaint, the FTC exhausted all reasonable efforts to locate Cottelli. Based on all available evidence, Cottelli currently resides in a country other than the United States.

The FTC's efforts to notify Cottelli of the pre-complaint investigation began in 2016 when the agency issued a CID to him seeking information, documents, and testimony about his involvement with MyEx.com. At the time, the FTC presumed that Cottelli was located in the U.S., based on contact information he provided to GoDaddy and research by FTC staff. The FTC served the CID at the only known U.S. address for him: 6130 W. Flamingo Road #732, Las Vegas, Nevada. When Cottelli did not respond to the CID, the FTC discovered that the address is a commercial mail receiving agency ("CMRA"). *See supra* footnote 2; Exh. 1 at 4 (Thomas Decl. at ¶ 13; Attach. G).

Although Cottelli presumably received the CID from the CMRA, the FTC hired a private investigator to locate his U.S. residential address for service when he failed to respond to the CID in a timely manner. The investigator conducted a comprehensive search, but could not identify a valid address in the U.S. *See* Exh. 2 at 1-2 (Hicks Decl. at ¶¶ 6-11).

Thereafter, Infante appeared at an investigational hearing and testified that Cottelli routinely travels internationally, often to South Africa and the Philippines. Exh. 3 at 7, 18, 22, 25 (Infante IH Transcript at 28, 69, 87-88, 99). Using that information, FTC investigators discovered substantial connections between Cottelli and South Africa, including business interests indicating that he may reside in

Cape Town, South Africa. Exh. 1 at 10-12 (Thomas Decl. at ¶¶ 43-49). For example, according to a South African website for a lounge in Cape Town, South Africa, which was also a website for which Cottelli bought GoDaddy services (JADELOUNGE.CO.ZA), Cottelli was the contact for reserving tables in a VIP lounge though the website or via email. *Id.* at 8, 11 (Thomas Decl. at ¶¶ 37, 43; Attach. H at 17; Attach. M). According to a March 1, 2017 article on the "night life agency" website solemanagement.com, Cottelli was in Cape Town and working in a nightclub. *Id.* at 11-12 (Thomas Decl. at ¶¶ 48-49; Attachs. N-O). In addition, documents from the South African Companies and Intellectual Property Commission (CIPC) show that Cottelli is also the Director of the South African business enterprise Manhattan Project. *Id.* at 11 (Thomas Decl. at ¶¶ 44-45; Attach. E).

To locate Cottelli, the FTC retained a private law firm in South Africa to conduct an investigation, which, in turn, retained a private investigator. *See* Exh. 5 at 1-2 (DePaul Decl. at ¶¶ 4-9). The law firm and the private investigator identified substantial connections between Cottelli and Cape Town, including phone numbers, corporate entities, and a possible residential address. *Id.* 2-3 (DePaul Decl. at ¶¶ 8-11; Attach. A). When the private investigator visited the residential address, however, two caretakers informed him that Cottelli was currently "overseas." *Id.* at 3 (DePaul Decl. at ¶ 12; Attach. B). The investigator later confirmed this with sources at the South African Department of Home Affairs, which reported that Cottelli left South Africa in August 2016 on British Airways flight number 58. *Id.* at 3-4 (DePaul Decl. at ¶¶ 13-14; Attach. C).

Internet searches show that this flight is a direct route from Cape Town International Airport to Heathrow Airport in London, England. *Id.* at 4 (DePaul Decl. at ¶ 15). Accordingly, the FTC requested assistance locating Cottelli from U.K. authorities, but they were unable to provide any additional information. *Id.*

7

(DePaul Decl. at ¶ 16). Cottelli may currently reside in the U.K., or he may reside in yet another country.

Before filing this motion, the FTC confirmed that Cottelli has not returned to the U.S. by conducting another comprehensive address search and attempting service, as a precautionary measure, at the address the U.S. private investigator identified and discredited in late 2016. *See* Exh. 6 (Affidavit of Bradford Nielsen). The process server stated he served the summons and complaint on an individual by the name of Robert Fisher, who identified himself as the defendant's father and co-resident. *Id*. FTC staff subsequently received an email from Jason Fisher, owner of the home on which service was performed, stating that "[n]either Shad Applegate not John Applegate currently live" at the address and he is "not authorized to accept service on any of the parties' behalf[.]" Exh. 7 (Email from J. Fisher to M. Cox and A. Lefrak, January 16, 2018). Fisher previously represented Defendant EMP Media, Inc.

In another attempt to locate Cottelli for service, FTC staff also called six different phone numbers reported to be associated with Shad Cottelli immediately after filing the complaint. Exh. 8 at 1-2 (Davis Decl. at ¶¶ 6-11). Five numbers were not answered or were not active numbers. *Id.* The FTC's paralegal was able to leave a voicemail at the sixth number, but received no response to the voicemail. *Id.*

### C. Cottelli appears to be aware of this action and is likely evading service of process

The FTC's extensive efforts to locate Cottelli, including serving him with a CID at a known business address and emailing him about plans to file the action, and his repeated communications with Infante during the FTC's investigation, including an email he wrote suggesting defenses to such an action, indicate that Cottelli is aware of these proceedings and actively evading service of process.

8

For instance, the FTC served Cottelli with a CID at the CMRA that he uses for his online business operations. *See supra* footnote 2; Sec. B. Then, FTC investigators sent Cottelli emails at two addresses that he actively uses to communicate with his co-defendant about business operations, including during the pendency of the FTC's investigation. Exh. 8 at 1 (Davis Decl.at ¶¶ 4-5). Although Cottelli did not respond to the emails, they did not bounce back or return a failed delivery notice, indicating that he likely received them and chose to ignore them. *See id*. Moreover, Cottelli has been communicating by email with his co-defendant throughout the pendency of the FTC's investigation, and with Defendant EMP Media's former counsel, Jason Fisher. Exh. 4 at 1 (Infante Decl.) at ¶ 9; Attachs. G, I-J).

In addition, Cottelli has, in the past, made efforts to evade identification by law enforcement. In 2013, around the time individuals and U.S. criminal law enforcement were beginning to make inquiries into taking down content from MyEx.com, including possible child exploitation and underage content materials, Cottelli changed the contact information for MyEx.com's domain name to a "made-up" alias and address in the Netherlands. *Id*. at 4-8 (Thomas Decl. at ¶¶ 19-22, 28, 33). When the domain registrar confronted Cottelli about the change, he responded by admitting that the name and address were "made up" (sic) and that MyEx.com is his domain name. *Id*. at 5-6 (Thomas Decl. at ¶ 22; Attach. H at 13). He then moved the MyEx.com domain registration to another registrar, changing the account name again but keeping the "made-up" Netherlands address. *Id*. at 7-8 (Thomas Decl. at ¶¶ 31-32, 35). Thereafter, Cottelli moved the operation offshore and used a privacy registration service to hide the domain registration details. *Id*. at 9 (Thomas Decl. at ¶¶ 39-40, Attach. J at 4). He then legally changed his name from Shad Applegate to Shad Cottelli in July 2015. Exh. 1 at 2 (Thomas Decl. at ¶ 7; Attach. B at 12-13).

## II. LEGAL STANDARD

In recognition of the time-consuming, expensive, and often burdensome nature of service on foreign parties, the Federal Rules of Civil Procedure provide various methods for plaintiffs to serve foreign individuals. These include service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f).

Although parties often use the methods in the first two subsections of Rule 4(f) when those methods of service are available, court-directed service under Rule 4(f)(3) is as favored by courts as service that is effected under Rule 4(f)'s other subsections. The Ninth Circuit has long recognized that there is no "hierarchy of preferred methods of service of process." *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-1015 (9th Cir. 2002). "Rule 4(f)(3) is not subsumed within or

in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *Id.* at 1015. It is therefore within the "sound discretion" of the court to determine "when the particularities and necessities of a given case require alternative service of process under Rule 4(f)(3)." *Id.* at 1016.

Rule 4(f)(3) provides the court with broad flexibility in determining the means of service as long as the methods of service comport with due process and are "reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Here, alternative service by email is appropriate because: (1) the defendant currently resides in an undisclosed foreign location, and the U.S. is not a signatory to an international agreement that governs service, and (2) service by email is not only reasonably calculated to provide the defendant with notice of this action, but is the service mechanism most likely to actually reach him.

## II. ARGUMENT

### A. There is no international convention that would bar service by email on Cottelli under Rule 4(f)(3)

Rule 4(f) governs service of process in this case because, as set forth in Section I.B., the FTC's extensive pre-Complaint investigation indicates that Cottelli is currently located outside the United States. As set forth in Section I.B., the FTC exhausted all reasonable efforts to identify Cottelli's country of residence, but has not been able to identify his exact whereabouts. Because Cottelli's country location and address are unknown despite the FTC's diligent efforts to locate him, there is no international agreement that applies here.[4] *See Neumont Univ.*, *LLC v.*

---

[4] The U.S. is only a signatory to two international service agreements – the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (commonly referred to as

11

*Nickles*, 304 F.R.D. 594, 600 (D. Nev. 2015) (granting motion for service by email when the defendant's active concealment of his location made it impossible to address if an international convention barred the service mechanism).

### B. Court-ordered service of process on Cottelli by email comports with due process.

This Court may order service by email on Cottelli provided that it is consistent with constitutional notions of due process that require court-ordered alternative means of service be reasonably calculated to provide a defendant with actual notice of the pending action and the opportunity to be heard. Courts frequently find that service by email meets the due process threshold when, as here, foreign-based defendants operate their business online and routinely communicate by email. *See Rio Props.*, 284 F.3d at 1017-18 (ordering service by

---

the "Hague Service Convention") and the Inter-American Convention on Letters Rogatory and its separate Additional Protocol.

The Hague Service Convention only applies when the defendant's address is known. *See* Art. 1. Here, Cottelli's address is unknown despite the FTC's diligent efforts to locate him, which means the Convention does not apply to service on Cottelli. Even if the FTC had an exact address for Cottelli in a country that is party to the Hague Service Convention, however, the Convention would not necessarily bar email service ordered by the court under Rule 4(f)(3). The Hague Service Convention permits a number of methods of service, including service via postal channels unless a country has objected to such service. *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017). Because the Convention pre-dates the use of email, it is unclear whether a country's objection to postal service would extend to email service. In any event, courts in this Circuit have permitted email service under Rule 4(f)(3) even when the Hague Convention applies, such as when there are grounds for believing that the defendants has or will seek to avoid personal service. *SEC v. Banc De Binary*, No. 2:13-cv-993-RCJ-VCF, 2014 U.S. Dist. LEXIS 263730, at *3-5 (D. Nev. Mar. 3, 2014); *Liberty Media Holdings, LLC v. Letyagin,* No. 2:12-cv-00923-LRH-GWF, 2012 U.S. Dist. LEXIS 80326, at *2-5 (D. Nev. June 11, 2012); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 U.S. Dist. LEXIS 42160, at *6-7 (N.D. Cal. Mar. 27, 2012).

The Inter-American Convention is effective in the United States only for a limited number of Central and South American countries that have also agreed to execute the Additional Protocol, a secondary instrument that significantly modifies the terms and conditions of the original Convention. It does not appear from the FTC's pre-Complaint investigation that Cottelli resides in any of the relevant countries. In addition, U.S. courts have held that the Inter-American Convention is voluntary, and does not bar service under Rule (4)(f)(3). *See SA Luxury Expeditions, LLC v. Latin Am. for Less, LLC*, No. C 14-04085 WHA, 2015 U.S. Dist. LEXIS 109796, at *3-6 (N.D. Cal. Aug. 19, 2015) (finding that the Inter-American Convention does not preempt service by other means, and ordering service pursuant to Rule 4(f)(3)); *Sweet v. Transamerica Life Ins. Co.,* No. 2:10-cv-01383-LDG-GWF, 2011 U.S. Dist. LEXIS 70716, at *6-7, n.1 (D. Nev. June 29, 2011) (ordering service pursuant to Rule 4(f)(3) and holding that the Inter-American Convention "does not provide an exclusive method of effecting service between the signatories."); *Kreimerman v. Casa Veerkamp, S.A.*, 22 F.3d 634, 644 (5th Cir. 1994) (convention does not preempt other methods of service).

email when the facts show the defendant "particularly has embraced the modern e-business model and profited immensely from it . . ." and "structured its business such that it could be contacted *only* via its email address."); *Neumont Univ.*, 304 F.R.D. at 600 (ordering email service considering the totality of the circumstances, including "the internet based nature of the claims, [and the defendant's] use of his email address and on-line presence as a shield and a sword to evade service . . . ."); *Williams v. Adver. Sex. L.L.C.*, 231 F.R.D. 483, 487 (N.D. W.V. 2005) (revenge porn case in which the court ordered service by email, finding that the plaintiff established that the defendant was a "sophisticated participant in e-commerce" and used the email address to conduct the online business). *See also Eng'g Recycling Maschinen Und an Lagen Ges v. Julien,* No. 2:16-cv-00267-JCM-GWF, 2016 U.S. Dist. LEXIS 111475, at *3-4 (D. Nev. Aug. 3, 2016) (ordering service by e-mail); *MGM Resorts Int'l v. Unknown Registrant*, No. 2:14-cv-01613-GMN-VCF, 2015 U.S. Dist. LEXIS 20118, at *3-5 (D. Nev. Feb. 17, 2015) (same); *Liberty Media Holdings, LLC v. Letyagin*, No. 2:12-cv-00923-LRH-GWF, 2012 U.S. Dist. LEXIS 80326 (D. Nev. June 11, 2012), at *2-5 (same).[5]

As set forth in Section I.A., Cottelli routinely communicates regarding his business interests and with his co-defendant through four email addresses: shadapplegate@gmail.com, shadcottelli@gmail.com, eroticmp@gmail.com, and enzovalentino@protonmail.com. Notably, Infante testified that Cottelli communicated with him as recently as November 2017 from three of those email addresses. The dates of most of these communications overlapped with the FTC's investigation and indicate that Cottelli is aware of the FTC's investigation and evading service of process. Moreover, the FTC tested two of these email addresses in September 2017 to inform Cottelli that FTC staff intended to recommend filing

---

[5] These facts set forth above are notably distinguishable from the facts in *Ahrens v. Pecknick*, No. 2:15-cv-02034-JAD-NJK, 2016 U.S. Dist. LEXIS 159443 (D. Nev. Nov. 16, 2016) (denying service by email where Plaintiff provided no evidence that Defendant used the email address regularly for business purposes, did not support the information relating to Defendant's email address with a declaration or affidavit, and Defendant did not appear to have actual knowledge of the lawsuit).

a complaint in this matter. Cottelli did not respond to the emails, but they also did not bounce back. *See Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Grp.*, No. SA CV 15-0246-DOC (DFMX), 2016 U.S. Dist. LEXIS 43128, at *8-9 (C.D. Cal. Mar. 25, 2016) (finding that email service is reasonably calculated to provide notice to a defendant when a test email is not returned as undeliverable or bounced back) (citations omitted). This evidence establishes that Cottelli actively and routinely uses these email addresses and the plaintiffs' proposed alternative service mechanism would therefore, comport with due process norms.

### III.   CONCLUSION

For all these reasons, Plaintiffs respectfully ask this Court to grant this motion and authorize Plaintiffs to service the summons and complaint on Defendant Cottelli, pursuant to Rule 4(f)(3), via the email addresses shadapplegate@gmail.com, shadcottelli@gmail.com, eroticmp@gmail.com, and enzovalentino@protonmail.com. A proposed order is attached.

Respectfully submitted,

Dated: January 26, 2018                    David Shonka
                                           Acting General Counsel


                                           */s/ Megan Cox*_____
                                           Megan Cox
                                           Allison M. Lefrak
                                           Attorneys for Plaintiff
                                           Federal Trade Commission
                                           600 Pennsylvania Avenue NW
                                           Mailstop CC-8256
                                           Washington, DC 20580
                                           Telephone: (202) 326-2282 (Cox)

Telephone: (202) 326-2804 (Lefrak)
Facsimile: (202) 326-3392
Email: mcox1@ftc.gov,
alefrak@ftc.gov

DAVID C. SHONKA
Acting General Counsel
MEGAN COX
ALLISON M. LEFRAK
Federal Trade Commission
600 Pennsylvania Avenue NW
Mailstop CC-8256
Washington, DC 20580
Telephone: (202) 326-2282 (Cox)
Telephone: (202) 326-2804 (Lefrak)
Facsimile: (202) 326-3392
Email: mcox1@ftc.gov, alefrak@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

ADAM PAUL LAXALT
Attorney General
JOHN R. MCGLAMERY
LAURA TUCKER
Deputy Attorneys General, Bureau of Consumer Protection
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
Phone (775) 684-1169
Facsimile: (775) 684-1170
Email: JmcGlamery@ag.nv.gov, LMTucker@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>and<br><br>STATE OF NEVADA,<br><br>Plaintiffs,<br><br>v.<br><br>EMP MEDIA, INC., et al.,<br><br>Defendants. | Case No: 2:18-cv-00035<br><br>**[PROPOSED] ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS ON DEFENDANT COTTELLI** |

Upon consideration of Plaintiffs' Motion for Authorization for Alternative Service of Process on Defendant Shad "John" Applegate, also known as Shad Cottelli; and finding good causes exists, it is hereby

ORDERED that, pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs may effect service of process on Defendant Shad "John" Applegate, also known as Shad Cottelli, in this matter by an alternate method of service.

IT IS FURTHER ORDERED that Plaintiffs may perfect service by sending the complaint and summons to Defendant Shad "John" Applegate, also known as Shad Cottelli, by electronic mail to each of the following email addresses: shadapplegate@gmail.com, shadcottelli@gmail.com, eroticmp@gmail.com, and enzovalentino@protonmail.com.

**IT IS SO ORDERED:**

_____
UNITED STATES MAGISTRATE JUDGE

DATED: _____

# CERTIFICATE OF SERVICE

I, Megan Cox, certify that on January 26, 2018, the foregoing Plaintiffs' Motion and Memorandum of Law to Authorize Alternative Service of Process on Defendant Cottelli and Proposed Order was filed and served using the Court's CM/ECF system.

I further certify that on this same date, a true and correct copy of the foregoing was served, via email and overnight mail to the following non-ECF participants.

Michelle W. Cohen: michelle@ifrahlaw.com
Counsel for Defendant, Aniello "Neil" Infante

Defendant EMP Media, Inc.
Registered Agent Aniello Infante
3016 Spring Meadow Circle
Youngstown, OH 44515-4953

Defendant Shad "John" Applegate
shadapplegate@gmail.com
shadcottelli@gmail.com

*/s/ Megan Cox*_____
Megan Cox
Federal Trade Commission