1

2

3

4

5

6

7      **UNITED STATES DISTRICT COURT**

8      **DISTRICT OF NEVADA**

9

10    FEDERAL TRADE COMMISSION, et al.,        )
                                              )
11               Plaintiff(s),               )     Case No. 2:18-cv-00035-APG-NJK
                                              )
12    vs.                                     )     ORDER
                                              )
13    EMP MEDIA, INC., et al.,                )     (Docket Nos. 12, 14)
                                              )
14               Defendant(s).               )
                                              )
      _____    )

15

16         Pending before the Court is Plaintiffs' motion for alternative service on Defendant Shad

17    Applegate, also known as Shad Cottelli.  Docket No. 12; *see also* Docket No. 14 (motion filed under

18    seal).  Plaintiffs request a court order for service by email based on their investigations into Defendant

19    Cottelli's whereabouts, which have proven unsuccessful.  *See generally* Docket Nos. 12, 14.  For the

20    reasons discussed below, the Court **GRANTS** Plaintiffs' motion.  *Id.*

21    **I.      STANDARDS**

22         Fed.R.Civ.P. 4(f) permits alternative service on an individual within a foreign country.  Although

23    service may be attempted in accordance with international agreements or the foreign country's service

24    laws, the Court has discretion to order service by "means not prohibited by international agreement."

25    Fed.R.Civ.P. 4(f)(3).  This discretion is not a last resort nor must service have previously been attempted

26    using the methods proscribed by Fed.R.Civ.P. 4(f)(1) and 4(f)(2).  *Rio Props., Inc. v. Rio Int'l Interlink*,

27    294 F.3d 1007, 1015 (9th Cir. 2002).

28

In exercising its discretion, the Court determines if the proposed method is prohibited by any international agreements and ensures that the method satisfies due process. *See SEC v. Banc De Binary*, 2014 U.S. Dist. LEXIS 26730, at *3-4 (D. Nev. Mar. 3, 2014). Due process requires that the method of service be (1) reasonably calculated to apprise the defendant of the action and (2) afford the defendant an opportunity to present his objections. *Mullane v. Vent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950); *see also Rio Props., Inc.*, 294 F.3d at 1016-1017; *see e.g.*, *Facebook, Inc. v. Banana Ads, LLC*, 2012 U.S. Dist. LEXIS 42160, at *4-5 (D. Nev. Mar. 27, 2012).

The Court then determines if service by email is proper by looking to the circumstances of the attempts of service and balancing any limitations of service by email with the benefits. *See Liberty Media Holdings, LLC v. Letyagin*, 2012 U.S. Dist. LEXIS 80326, at *4 (D. Nev. June 11, 2012). Service by email is proper when the defendant is unreachable by other means or does not have a known physical address. *See Rio Props., Inc.*, 294 F.3d at 1017. In such a situation, email is usually considered "the method most likely to reach the defendant." *Neumont Univ., LLC v. Nickles*, 304 F.R.D. 594 (D. Nev. 2015) (quoting *Rio Props., Inc.*, 294 F.3d at 1017)). Relevant circumstances include: (1) whether the claims at issue arise from the defendant's engagement in an Internet-business; (2) the degree of the defendant's reliance on emails as a means of communicating and conducting business, and (3) prior attempts of service made by mail, telephone, or other methods. *See Facebook, Inc.*, 2012 U.S. Dist. LEXIS 42160, at *4-9.

## II.    ANALYSIS

Although this case was initiated on January 9, 2018, Plaintiff Federal Trade Commission ("FTC") has been attempting to locate Defendant Cottelli's whereabouts since as early as August 2016. *See* Docket Nos. 1, 12-2 at 4, 14-2 at 4. In these two and one-half years, Plaintiff FTC's investigators have traced Defendant Cottelli from Las Vegas and Henderson, Nevada, to Cape Town, South Africa and the United Kingdom. *See generally*, Docket Nos. 12, 14. The earliest attempt was on August 17, 2016, when Plaintiff FTC served a civil investigative demand on Defendant Cottelli at his only known physical address at 6130 W. Flamingo Rd. #732, Las Vegas. Docket Nos. 12-2 at 4, 14-2 at 4. This location, however, was merely a commercial mail receiving agency, and Defendant Cottelli never responded to the demand. Docket Nos. 12 at 6, 14 at 6.

1    A.    Prohibition by International Agreements

2    Plaintiffs submit that, because Defendant Cottelli's physical location is unknown, it cannot be

3    determined if an international agreement applies. *Id.* at n.4. The Court may nonetheless order service

4    by email when a defendant's country of location is unknown as a result of the defendant evading service.

5    *See Neumont Univ., LLC*, 304 F.R.D. at 600 (ordering service by email where the defendant appeared

6    to have been "actively concealing his location to evade service of process," which made it "impossible"

7    for the court "to determine whether email service would be inconsistent with an international

8    agreement.").

9    In the instant case, Plaintiffs submit that Defendant Cottelli is likely evading service of process.

10   Docket Nos. 12 at 8-9, 14 at 9-10. For example, Plaintiffs submit that they have emailed Defendant

11   Cottelli using two email addresses known to be used by him for business communications; although no

12   response was received, the emails did not bounce back as undeliverable. *See e.g.*, *Toyo Tire & Rubber*

13   *Co., Ltd. v. CIA Whell Grp.*, 2016 U.S. Dist. LEXIS 43128, at *8-9 (C.D. Cal. Mar. 25, 2016) (finding

14   that an email is presumed delivered when it is not returned as undeliverable). Plaintiffs further submit

15   examples of Defendant Cottelli's past elusive behavior in supplying false contact information and

16   addresses, as well as his change of name. Docket Nos. 12 at 9, 14 at 9-10. The Court finds that

17   Defendant Cottelli's current and relevant past behavior, in conjunction with the numerous attempts to

18   locate him (*see infra* Section II(B)(iv)), are indicative of a defendant who is actively evading process.

19   Therefore, Defendant's actions have made it impossible for the Court to determine whether an

20   international agreement prohibits service by email.[1]

21   B.    Due Process and Proper Service

22   As a threshold matter, service by email is permitted as an alternative method of service under

23   Fed.R.Civ.P. 4(f) that satisfies the due process requirements. *See Rio Props., Inc.*, 294 F.3d at 1017-18.

24   Accordingly, the Court discusses only whether service by email is proper in the instant case.

25

26

27   [1] The Hague Service Convention has 73 signatories and is frequently analyzed in situations where
     service is effectuated by email. Where the Hague Service Convention applies, courts have found that service
28   by email is not prohibited. *See e.g.*, *Banc De Binary*, 2014 U.S. Dist. LEXIS 26730, at *3-5.

1                    *i.*        Unknown Physical Address

2         Plaintiffs submit that extensive efforts and costs were expended to find Defendant Cottelli.

3 Docket Nos. 12 at 6-8, 12-6 at 5, 14 at 6-8, 14-6 at 5. Although there are four known physical addresses

4 connected to Defendant Cottelli (two in Las Vegas, one in Henderson, and one in Cape Town), service

5 has been unsuccessful at all four locations. Docket Nos. 12 at n.2, 6-8, 14 at n.2, 6-8. Therefore, the

6 Court finds that no known physical address exists for Defendant Cottelli.

7                   *ii.*       Engagement in Internet-Business

8         The Court now looks at the relevant circumstances of the instant case. As to the first factor, it

9 is uncontested that Plaintiffs' claims arise from Defendant Cottelli's engagement in an Internet-business.

10 Docket No. 1 at 18-20. Defendant Cottelli owns and operates MyEx.com, a website that posts sexually

11 explicit images of individuals with their corresponding contact information in an attempt to extort them

12 for money to remove the images and information. *Id.* at 4-5. Websites similar to MyEx.com are

13 commonly referred to as "revenge-porn" websites because the images are frequently supplied by

14 individuals who are attempting to harass and shame their former significant other. *See generally id.*

15 Plaintiffs claim, *inter alia*, that Defendant Cottelli is engaged in unfair and deceptive practices in

16 violation of the FTC Act by soliciting and posting sexually explicit images of individuals without their

17 consent on his website and extorting them to remove their images. *Id.* at 18-21. Therefore, the Court

18 finds that the claims at issue arise from Defendant Cottelli's engagement in an Internet-business.

19                   *iii.*      Reliance on Emails

20         As to the second factor, Defendant Cottelli relies on email to communicate and conduct his

21 business because, to have their image removed, a victim must send an email through the website and

22 pay a fee. *Id.* at 13-14; *see also* Docket Nos. 12 at 5, 14 at 5. Since in 2011, Defendant Cottelli has used

23 the email address shadapplegate@gmail.com as a point of contact in registering domain names for

24 multiple corporations and business entities with the domain registration company GoDaddy. Docket

25 Nos. 12-2 at 5-9, 14-2 at 5-10. Defendant Cottelli communicated with GoDaddy representatives through

26 this email address and also used it for other business related communications with his business partner,

27 Defendant Aniello Infante, as recently as August 2017. Docket Nos. 12-2 at 5-10, 12-5 at 3-20, 14-2

28 at 5-10, 14-5 at 3-20.

Defendant Cottelli has used other email addresses as a means of communicating and conducting his business.  On February 26, 2016, Defendant Cottelli changed his email contact for GoDaddy to shadcottelli@gmail.com.  Docket Nos. 12-2 at 10, 80; 14-2 at 10, 80.  Defendant Infante also testified that he communicated with Defendant Cottelli in January and February 2017 from the email address eroticmp@gmail.com, and enzovalentino@protonmail.com in October 2017.  Docket Nos. 12-5 at 4, 21-29; 14-5 at 4, 21-29.  Therefore, the Court finds that Defendant Cottelli heavily relies on emails as a means of communicating and conducting his business.

*iv.*      Prior Attempts of Service

As to the third factor, Plaintiff FTC has used various methods to track and serve Defendant Cottelli.  On August 17, 2016, Plaintiffs FTC attempted to serve Defendant Cottelli a civil investigative demand at 6130 W. Flamingo Rd. #732, Las Vegas (Docket Nos. 12-2 at 4, 52-54; 14-2 at 4, 52-54).  Further, on October 24, 2016, service was attempted at another Las Vegas address, but a security guard notified the service processor that Defendant Cottelli "was not a tenant in the building" (Docket Nos. 12-3 at 3; 14-3 at 3).  On November 10, 2016, service was attempted at a Henderson address, but a security guard notified the service processor that Defendant Cottelli was not "listed as a resident at the property" (Docket Nos. 12-3 at 3; 14-3 at 3).  On September 21, 2017, Plaintiff FTC began investigating Defendant Cottelli's whereabouts in South Africa based on its research that connected him with various business entities in Cape Town and based on Defendant Infante's testimony that Defendant Cottelli frequently visited Cape Town (Docket Nos. 12-6 at 3-5; 14-6 at 3-5).  The South African investigation consisted of hiring a private law firm and personal investigator, who, on November 6, 2017, attempted service on a residential address in Cape Town, but was told that, although the property belonged to Defendant Cottelli, he was abroad (Docket Nos. 12-6 at 4, 11-12; 14-6 at 4, 11-12).  After confirming that Defendant Cottelli left South Africa on August 20, 2016 for the United Kingdom, Plaintiff FTC communicated with authorities in the United Kingdom on November 9, 2017, but has been unsuccessful in obtaining any information as of January 3, 2018 (Docket Nos. 12-6 at 4-5, 14; 14-6 at 4-5, 14).  On January 10, 2018, service was attempted again at the Henderson address, where the service processor noticed a FedEx envelope bearing Defendant Cottelli's name left at the door and was told by an individual, who identified himself as Defendant Cottelli's father, that Defendant Cottelli was not at

home (Docket Nos. 12-7 at 2-3; 14-7 at 2-3). On January 10, 2018, Plaintiff FTC's paralegal called six phone numbers connected to Defendant Cottelli, five of which were not active, and one on which the paralegal left a voicemail, but has not received a response (Docket Nos. 12-9 at 2-3, 14-9 at 2-3). Finally, on January 12, 2018, Plaintiff FTC received an email from an individual who claimed he resided at the Henderson address, that he was former counsel for Defendant EMP Media, Inc., and that he cannot accept service on behalf of Defendant Cottelli (Docket Nos. 12-8 at 2-3; 14-8 at 2-3).[2]

Therefore, the Court finds that Plaintiffs have made significant attempts to locate Defendant Cottelli, both as part of the pre-complaint investigation and following filing of the complaint for service.

### III.    CONCLUSION

Accordingly, the Court finds that service by email on Defendant Cottelli is proper and **GRANTS** Plaintiffs' motion for alternative service. Docket Nos. 12, 14. Plaintiffs shall effectuate service, no later than February 9, 2018, on the following email addresses: shadapplegate@gmail.com, shadcottelli@gmail.com, eroticmp@gmail.com, and enzovalentino@protonmail.com.

IT IS SO ORDERED.

DATED: February 1, 2018

_____
NANCY J. KOPPE
United States Magistrate Judge

---

[2] Defendant Cottelli was the president of EMP, Media, Inc. and served in various other roles within the company until March 2014. Docket No. 1 at 4.